Scott, J.
The controversy in this case is now limited to the findings and rulings of the court below, on the exceptions taken to the report of the master in relation to the final account of the plaintiff’ in error, as administrator of the estate of S. J. John. The main question in' the case is, Did the court below err, to the prejudice of plaintiff in er *539 ror, in finding, from the vouchers and testimony in the case, and from the facts found by the master, that the claims against the estate, which were purchased for about one-third of their nominal amount, “ were so compounded and purchased by Richard IT. Collins, while retained and acting as attorney for said administrator, in the settlement of said estate;” and in holding that, “bylaw, said administrator was entitled to credit in his accounts for the sum or amount actually paid for the said claims respectively, and for no more ? ” And was the final order and judgment, made in accordance with such finding, erroneous ?
These questions present mainly, if not solely, an issue of fact. For we do not understand that there is any substantial disagreement between counsel, as to the law governing this main subject of contest. "We do not understand counsel as questioning the soundness of the rule, well settled in equity, that á trustee is not permitted to manage the subject of his trust so as to make profits or gain therefrom for himself. The beneficiaries in the trust have a right to' expect and require the exercise of his best judgment, care, and diligence on their behalf, and the gains resulting therefrom inure to their sole benefit. An administrator can not, therefore, be allowed to compromise, adjust, and settle claims agaiust the estate for which he is acting, for less than their face, and put the difference in his own- pocket. And it is equally clear, that what he can not do directly, he will not be allowed to do through his attorney or agent. The maxim, “ qui facit per alium, facit per se,” is, at least, as efficacious and forcible in equity, as at law.
If, in purchasing or satisfying these claims, Collins was retained by, and was acting as attorney for, the administrator, we think it immaterial whether, as between themselves, it was understood that he was retained by the administrator personally or officially. In either case, so long as the trust continues, such purchase is the act of the trustee, and must inure to the benefit of the cestuis que trust, and not of the administrator personally. Nor does it make any difference whether, in this business, Collins was employed solely *540 by the administrator, or by him and others, with a view to their joint profit, For, what he may not do singly, the policy of the law will not permit him to participate in doing. In matters pertaining to his trust, he must be the servant solely of the beneficiaries. These principles are so well settled as to require no citation of authorities in their support. Nor do we understand them to be drawn directly in question by the able counsel who represent the plaintiff in error.
The main question, then, is one of fact: Was Richard Collins, in the purchase or adjustment of the claims in question, acting as the agent or attorney of the plaintiff in error, or was he acting solely for others ?
The following facts, bearing more or less directly on this question, appear from the record :
Circumstances, which to a great extent were beyond the control of the plaintiff in error, have rendered his admin-' istration of the estate of S. J. John an unfortunate one for himself. The assets of the estate were not administered according to law. A large portion of them, amounting at the appraisement to some $47,000, or more, were, by an arrangement deemed prudent at the time, taken by the widow at the appraisement, for which he took her note without security. She turned this property over to him to be disposed of otherwise than by public sale. He was liable for its appraised value, and lost largely by the operation.
His brother, George Cox, was one of the sureties on his administration bond. Before the purchase of the claims in controversy, George Cox died intestate, leaving considerable property. His brothers and sisters were his heirs ; of whom Edward Cox, the plaintiff in error, was one, and the wife of Richard Collins was another, There were several other brothers and sisters, and the testimony tends to show that they were apprehensive of a liability devolving on them in consequence of the suretyship of their brother, George, for the faithful administration of the John estate; and that all the heirs of George Cox, including Edward Cox, the present plaintiff, allowed and authorized Collins *541 to use, for the purchase of the claims in dispute, moneys which came to his hands from the estate of George Cox, and which were the joint property of his heirs.
In the administrator’s account, the disputed claims are all stated in the names of the original creditors, and not as payments made to Collins, as their assignee.
The record also shows clearly that, for several years prior to the settlement of these claims with the creditors, Collins had been acting as the attorney of plaintiff in error, in endeavoring to collect and adjust doubtful claims in favor of the John estate, and in defending his partial settlement accounts against exceptions taken thereto by the widow and heirs, and regarded himself as general advisory counsel for the administrator. Among the last vouchers in the administration account, is a receipted account of Collins for $1,200, as fees “ for his efforts to collect or compromise bad debts, defending ads. widow and heirs, and advice generally.”
When Collins first commenced getting in claims of creditors, the business was transacted in the name of the adminstrator, and receipts were taken as for payments made by him. Subsequently, the formal mode of operation was so far changed, as to substitute for a receipt a transfer of the claim of the creditor, without recourse.
The claim of one creditor was adjusted by Collins, by an agreement which seems to have contemplated and provided for the conveyance to the creditor of certain real estate, of which John died seized. This arrangement seems to have been carried out without objection by the administrator.
There is much testimony in the case, both by creditors and attorneys for creditors, with whom settlements were made by Collins, tending to prove that, in many cases, favorable terms of settlement and large discounts were obtained from creditors, by the representations of Collins that the John estate was insolvent, and that he was acting in the premises on behalf and in the interest of the administrator, the widow, and the heirs of S. J. John.
*542 It) one case, an attorney representing a creditor’s claim, wrote to-the administrator, demanding payment. In response to this letter, he was, shortly afterward, visited by Collins, on whose representations a very favorable settlement and large discount from the face of the claim were obtained from the attorney acting for his client.
It is true Collins testifies: “ I did not act as the attorney of the administrator in the purchase of these claims, but as the agent and attorney of the heirs of George Cox, using their money for that purpose.” But, it must be remembered that the administrator himself was one of those heirs. Indeed, he was the one most deeply interested in the settlement of John’s estate. Iiis liability was primary ; that of the other heirs of George Cox was only secondary.
And as to the means, by the use of which Mr. Collins was enabled to satisfy and extinguish the claims of creditors, he himself testifies that he had, in his hands, more than $15,000 of their money, all of which he !£ was authorized by them, and directed to use, if necessary, in purchasing the outstanding claims against S. J. John’s estate.” This money was mainly the proceeds of two farms and certain city property sold by him as the agent and attorney of the heirs of George Cox. The claims, then, were bought and paid for with money belonging jointly to Edward Cox and his surviving brothers and sisters; in which each had an equal interest. And if, in the purchase of the claims, Collius was acting as the agent of the heirs of George Cox, then Edward Cox was one of his principals, and contributed an equal share toward furnishing the means for that purpose.
These facts, testified to by Mr. Collins, who was not an unwilling witness for the administrator, negative the finding of the master, that Edward Cox contributed no part of the means with which the claims in question were purchased.
It is also shown, by the record, that the power of attorney whereby Collins was authorized to act for the heirs of George Cox, in renting, leasing, and selling their real
*543 4 estate;' and the agreement by which his fees for services were fixed, were both executed by Edward Cox as well as by his brothers and sisters.
We think the evidence in the case fully justifies the finding, thait Richard Collins, in the purchase of these claims, was acting as the attorney or agent of the plaintiff in error. And though others may have united with the administrator, in authorizing these- purchases for his benefit, they must inure to the benefit of the estate'of S. J. John.
Whether the same conclusion of law would not result from the relations which Collins, the purchaser, sustained toward the estate of John, we have not thought it necesto determine.
In addition to this main subject of controversy, it is claimed, by plaintiff'in error, that the court below erred in not directing payment, before distribution, of a sum which, it was claimed, was found, by the master’s report, to be due from the estate of S. J. John to the estate of George Cox; and also in ordering distribution to be made to the widow of Mr. John, with the children, when she was indebted to the administrator upon the note which he took from her for the stock of furniture at the valuation made by the appraisers.
The master, in his report, credits the administrator with the payment of a portion of a claim in favor of the estate of George Cox, against the estate of S. J. John. He refused to credit him with the residue of the claim, on the ground that there was no voucher for its payment, and it had not been transferred to him. And he incidentally adds, as a deduction, that the residue of the claim is still a debt of John’s estate to that of George Cox. But it was not the duty of the master,-nor was it-within his province, to determine the validity of unpaid claims against the estate of John. Nor had the probate court jurisdiction to determine controversies between alleged creditors and the administrator. And, if it had, the exercise of such jurisdiction does not appear to have been invoked by the administrator of the estate of George Cox. We think it is no part of the *544 duty of a probate court, upon final settlement of tbe administration account, to provide, by its final order and judgment, for the payment of claims which no creditor is asserting.
Nor had the probate court jurisdiction, on settlement of the administrator’s account, to inquire whether Mrs. John, or any other distributee of the estate, was indebted to the administrator, or to ascertain the amount of such indebtedness, and provide for its payment in whole or in part.
The settlement made by and before the probate court, had relation only to accounts between the administrator and the estate; and not to the state of accounts between him and the several distributees.
If the probate court found a balance in the hands of the administrator, it could only order its distribution according to law. When the widow shall seek to enforce such order of distribution, by proceedings in the probate court, or by action in the court of common pleas, it will, doubtless, be competent for the administrator to set off’ against her claim such liquidated demands as he may hold against her.
We think the judgment of the court of common pleas must be affirmed.
Wright, J., dissented from the judgment.